

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

Richard L. Horwitz
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone

July 10, 2014

**VIA ELECTRONIC FILING**
The Honorable Leonard P. Stark
Chief Judge, United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:  *Walker Digital, LLC ("WD") v. Google Inc.*, Case No. 1:11-cv-0318-LPS (D. Del.)

Dear Chief Judge Stark:

Google respectfully provides the following reply regarding the effect of *Alice Corp. v. CLS Bank Int'l*, 573 U.S. __, 2014 WL 2765283, at *1 (U.S. June 19, 2014), on this case.  *See* D.I. 305.

**I.  WD's Contention That the Claims At Issue Are Not Directed to an Abstract Idea Is Contrary to the Holding and Rationale of *Alice***

In *Alice,* the Court expressly rejected the contention "that the abstract-ideas category is confined to preexisting, fundamental truths," [1] explaining instead that "a method of organizing human activity" falls squarely within the realm of abstract ideas.  *See Alice*, 2014 WL 2765283, at *8.  WD has not shown that the asserted claims cover anything more than a method of organizing human activity.  As illustrated in Google's original letter brief, there is no meaningful distinction between the concept of risk hedging in *Bilski*, the concept of intermediated settlement in *Alice*, and the "fundamental concept" at issue here.  *See* D.I. 306 at 3.

In an attempt to distance itself from the claims in *Alice* which "involve a method of exchanging financial obligations between two parties using a third-party intermediary," *see Alice*, 2014 WL 2765283, at *7, WD argues that the "concept underlying the '270 and '272 patents is the controlled release of sensitive or confidential information between two parties." [2]  *See* D.I. 307 at 2.  According to WD, this is sufficiently distinct from the concept of "using an intermediary to facilitate controlled communication or exchange of information between anonymous parties" to remove the asserted claims from the abstract ideas category.  *See* D.I. 306 at 2.

---

[1]  Even if WD were correct that only "fundamental economic practices" constitute abstract ideas, the concept of an intermediated exchange of information between parties still falls within that proscribed category.  *See Alice*, 2014 WL 2765283, at *8 ("The use of a third-party intermediary (or 'clearing house') is also a building block of the modern economy.").

[2]  Despite its omission of the term "intermediary" here, WD later argues that the patents-in-suit use "a trustworthy middleman (a computer), allowing for faster and better access to more stored information" to facilitate controlled communications between parties.  *See* D.I. 307 at 4; *cf. Alice*, 2014 WL 2765283, at *11 (rejecting patentee's argument that "the claims are patent eligible because these steps require a substantial and meaningful role for the computer…. [I]n other words, the computer is itself the intermediary.").  Setting aside the other flaws in WD's argument, *see, e.g.*, D.I. 289 at 9-10, it remains undisputed that the challenged claims involve the use of an intermediary to facilitate communication or exchange of information between parties.  *See also* D.I. 273-1 Ex. A at 14-15, Ex. C at 16.

Neither the nature of the information exchanged between parties or the alleged lack of anonymity in the '272 patent distinguishes the asserted claims from the realm of abstract ideas as the Court has used that term in *Alice*. Even if the asserted claims did limit the information exchanged between parties to "sensitive or confidential information," which they do not, the type of information exchanged fails to provide any meaningful distinction from the abstract idea. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (affirming decision of Robinson, J., stating "the important inquiry for a § 101 analysis is to look to the claim"), *cert. denied*, No. 13-918 (U.S. June 30, 2014). Furthermore, if WD were correct that the specification could provide the necessary distinction, then the '272 patent specification is replete with references to "anonymous" communications omitted from the quotes in WD's brief. *Compare* D.I. 307 at 2 *with* '272 patent at 1:12-14, '270 patent at 4:10-12 (both stating that the controlled exchange of information is for "anonymous communication(s)").

## II. WD Cannot Point to Any Claim Elements That Contain Any Inventive Concept To Transform the Claimed Abstract Idea Into a Patent-Eligible Application[3]

At *Mayo* step two, the elements of the claim are examined to determine whether they include "additional features" sufficient to supply an inventive concept. *See Alice*, 2014 WL 2765283, at *9 ("The introduction of a computer into the claims does not alter the analysis at *Mayo* step two."). Unable to identify any such claim elements, WD instead argues pre-emption.[4] *See* D.I. 307 at 3 ("the scope of the asserted [claims of the] patents does not cover an entire fundamental abstract concept"). Pre-emption, however, is the concern that drives the exclusionary principle of § 101, not the second step in *Mayo*'s framework. *See Alice*, 2014 WL 2765283, at *5, 9 (patent not eligible under § 101 if it "would pre-empt use of this approach in all fields and would effectively grant a monopoly over an abstract idea").

WD's reliance on the claims in *Diamond v. Diehr*, 450 U.S. 175 (1981), is similarly unavailing to show that the claim elements in this case contain an inventive concept.[5]

---

[3] WD's straw-man argument that Google is arguing obviousness under § 103 as opposed to applying the § 101 analysis of *Alice*, *see* D.I. 307 at 4-5, is predicated on a misunderstanding of the Court's reasoning. *See Alice*, 2014 WL 2765283, at *9 (claim must "supply a new and useful application of the [abstract] idea to be patent eligible," and computer implementation does not supply necessary inventive concept if claims "could be carried out in existing computers long in use"). Nowhere in Google's brief is there any mention of obviousness, and the language quoted by WD is derived from WD's own description of the claims as requiring only "conventional and known machinery …." *See* D.I. 281 at 11.

[4] WD's pre-emption argument is also faulty. *Compare* D.I. 307 at 3 ("the scope of the asserted patents does not cover an entire fundamental abstract concept" because "[t]he claims of the patents-in-suit claim … specific implementations of the general concept of controlled communications") *with Alice*, 2014 WL 2765283, at *9 (rejecting argument that "implementing a principle in some specific fashion will automatically fall within the patentable subject matter of § 101").

[5] The Court held that the claims at issue in *Diehr* did not violate § 101 because the claims did "not seek to patent a mathematical formula. Instead, they seek patent protection for a process of curing synthetic rubber." *See Diehr*, 450 U.S. at 187. In contrast, adding a generic computer implementation to the abstract concept of an intermediated information exchange does not constitute an improvement of a technological process. *See Alice*, 2014 WL 2765283, at *10 (limiting use of abstract idea to a particular technological environment not enough for patent eligibility).

          Respectfully,

          */s/ Richard L. Horwitz*

          Richard L. Horwitz

RLH/msb/1158754/36776

Enclosures
cc:    Clerk of the Court (via hand delivery)
        Counsel of Record (via electronic mail)